# Commonwealth v. Kelly.

The records of proceedings in the office of a Justice of the Peace or of an Alderman are of a judicial and public nature. The official records of the office cannot be considered as the personal property or perquisites of the occupant. When the Alderman goes out of office, his records, on account of their public and judicial character should be delivered to his successor.

That the records of criminal cases kept by an Alderman whose term of office has expired are often needed subsequently, either as evidence in other cases, or as the basis of other or further proceedings is evident so that on the ground of convenience and necessity, the records should be in the custody of the Alderman then in office.

A retiring Alderman may die or he may move from the State and take his papers with him beyond the reach of process, or the records may be scattered or lost. These inconveniences may be avoided by the transfer of all official records and papers to the successor in office.

Acts of March 20, 1810, Sections 4 and 5, Sm. 164; May 1, 1861, P. L. 162; June 11, 1885, P. L. 110 and June 21, 1839, Sec. 10, harmonize.

ALDERMEN—JUSTICES OF THE PEACE—SUCCESSORS IN OFFICE—
DISPOSITION OF DOCKETS.

No. 243, May Term, 1902, C. P. of Lackawanna Co.

P. F. Laughran, Esq., for relator.

W. W. Baylor, Esq., for respondent.

Opinion by EDWARDS, P. J., Aug. 11, 1902.

The relator in this case filed his petition praying for a writ of alternative mandamus to compel the respondent to deliver to him, the relator, the dockets and papers pertaining to the office of Alderman of the eighteenth ward of the city of Scranton, or to show cause why he should not do so. The respondent was the immediate predecessor of the relator in said office. The respondent answers in substance that he is willing to hand to his successor the "civil docket," so called, and all papers pertaining to civil cases, and that, in fact he has offered the docket and papers to the relator, who has refused them; but that he, the respondent, is not bound to deliver over the papers, docket or records pertaining to criminal cases. There are no questions of fact in dispute. We shall treat the answer of the defendant as a return to the mandamus. We cannot find among the files a demurrer to the return. The case was argued as if a

demurrer had been filed. Let the relator file a formal demurrer so that there may be a proper issue before us.

The Act of March 20, 1810, Secs. 4 & 5 Sm. 164, provides that all proceedings in 'civil causes "had before the Justice, shall be entered at large by him, in a docket or book to be kept by him for that purpose." When the term of a Justice or Alderman has expired the Act of June 21, 1839, Sec. 10, provides that he shall "deliver over his dockets and like papers to the person who shall be elected to succeed him in said ward, borough or township." The argument made by respondent's counsel, is to the effect that an Alderman is not bound to deliver over to his successor in office, any docket other than the one the law directs him to keep, viz: a docket containing the records of civil causes, and all papers pertaining to these causes, and this the respondent is willing and has offered to do. If, says the counsel, the Act of 1810 describes the kind of a docket which an Alderman must keep, and the Act of 1839 directs him to deliver this docket to his successor, he should not be compelled to hand over anything else without express legislative authority. And counsel goes further, and contends that if by any legislation, subsequent to 1839, an Alderman is required to keep other records than those prescribed by the Act of 1810, the mandatory provisions of the Act of 1839 could not be applied to the additional records. We think the argument is more specious than correct. We shall proceed to state some of the reasons which induce us to adopt a different view.

1. The records of proceedings in the office of a Justice of the Peace, or of an Alderman, are of a judicial and public nature. The office is not only of ancient and honorable origin, but it is provided for by our Constitution. It is an important part of the judicial system of the Commonwealth. The official records of the office cannot be considered as the personal property or perquisites of the occupant. When the Alderman goes out of office, his records, on account of their public and judicial character, should be delivered to his successor. This view of the

matter is not conclusive as to the contention in this case, but we give it as one of the reasons for the belief that the Act of. 1839, providing for the transfer of the docket and like papers in its spirit and legislative scope, is broad enough to include the records relating to criminal cases.

2. This construction of the Act of 1839 is in harmony with the reason of the law, because it meets the demands of convenience and necessity. That the records of criminal cases kept by an Alderman whose term of office has expired are often needed subsequently, either as evidence in other cases, or as the basis of other or further proceedings, is evident. These records may be needed in habeas corpus cases; or, in suits on forfeited recognizances; or, in the determination of pleas of former acquittal or conviction in cases where it might be claimed the offenses were the subjects of final proceedings before the Alderman under the Act of May 1, 1861, P. L. 682; or, in prosecution for perjury, or in many other ways, that do not occur to us now. So that on the ground of convenience and necessity, the records should be in the custody of the Alderman then in office. A retiring Alderman may die, or he may move from the State and take his papers with him beyond the reach of process, or the records may be scattered and lost; but these inconveniences may be avoided by the transfer of all official records and papers to the successor in the office.

3. But it is not necessary to rely on the general principles stated. A close examination of the Acts of Assembly already referred to convinces us that the whole matter is sufficiently within the grasp of the letter of the law. As already stated, the Act of 1810 provides that the Justice shall keep a docket, in which shall be entered the proceedings in civil cases. As far as we can find, this was the only docket the Justice was or is required to keep. In connection with criminal business, the next reference we find to a docket, is in the Act of May, 1861, P. L. 682, relating to criminal jurisdiction in certain counties, extended to Luzerne County in 1866, and therefore in force in Lacka-

wanna County.    Sec. 3 of this Act provides that if a defendant shall demand a jury trial, the Justice shall make an entry to that effect upon "his docket."    A similar reference to "his docket" is found in the supplementary Act of 1862, P. L. 273.    The general law of June 11, 1885, P. L. 110, provides that "it shall be the duty of all Aldermen, Justices of the Peace and Committing Magistrates    .   .   .    upon complaint being made in criminal cases    .   .   .    to enter such complaints upon their dockets, etc."    The conclusion is irresistible that these entries are to be made upon the docket referred to in the Act of 1810, supra. The Justice or Alderman can have but one docket.    There is no such thing as the so-called "criminal docket" in contradistinction to a "civil docket."    The law (1810) provides that the Justice shall keep a docket—"his docket."    He is not required to keep any other docket.    As a matter of convenience, he might keep the criminal cases in one book and the civil cases in another book.    Or, he might keep landlord and tenant cases in one book, cases in trespass in another, cases in assumpsit in a third, misdemeanors in a fourth, and felonies in a fifth.    It matters not how many books he uses, together they constitute the docket which the law requires him to keep, and which he must turn over to his successor.    If our views are correct, it follows that the contention of the relator must prevail, and that the respondent must, in the language of the Act of 1839, "deliver over his docket and like papers" to his successor in office.

We, therefore, sustain the demurrer and give judgment thereon in favor of the relator with costs, and we direct a peremptory writ of mandamus to issue, directing the respondent to deliver over to the relator the docket books and papers containing the record of the official action of said respondent, as Alderman of the eighteenth ward of the City of Scranton, relating to all cases brought or heard before him during his term of office, as well as to deliver over to the relator all such dockets, books and papers received by respondent from his predecessor in said office.